**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CATHERINE HALES,** | § | |
| | § | |
| *Plaintiff* | § | |
| | § | **Civil Action No. ________________** |
| **v.** | § | |
| | § | |
| **NATIONWIDE COIN & BULLION RESERVE, INC., TURNER M. JONES, LAWRENCE P. KUYKENDALL, Sr. and DORIAN J. AUSBY** | § | |
| | § | |
| *Defendants* | § | |

## ORIGINAL COMPLAINT

**COMES NOW**, Plaintiff, Catherine Hales ("Ms. Hales" or "Plaintiff") and files this Original Complaint against the *Corporate Defendant*, Nationwide Coin & Bullion Reserve, Inc. ("NCBR") and the *Individual Defendants*, Turner M. Jones ("Jones"), Lawrence P. Kuykendall, Sr. ("Kuykendall"), and Dorian J. Ausby ("Ausby") (collectively "Defendants") and for cause of action respectfully alleges as follows:

## NATURE OF THE CASE

**1.** Plaintiff brings this action pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 (RICO), and Texas law. This case involves a fraud scheme by a group of Harris County precious metal coin dealers who committed telemarketing coin sales fraud against Ms. Hales as principals and agents of the corporate defendant, Nationwide Coin & Bullion

Reserve, Inc.,[1] a RICO enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(b)-(d)) (the "NCBR Enterprise").

**2.** The NCBR Enterprise's scheme was conducted by its principals, officers, directors, managers, and operators, Defendants, Jones and Kuykendall, and its telemarketing sales agent, Defendant, Ausby, who through either a closed-ended or, in the alternative, an open-ended pattern of racketeering activity of specific predicate acts, consisting of multiple high-pressure telemarketing phone calls[2] and fraudulent, unconscionably overpriced sales of precious metal "Don Everhart[3] Signature Series" "certified modern bullion" gold, silver, and platinum coins to Ms. Hales as "investments," accomplished via violations of the federal Mail Fraud and Wire Fraud statutes in furtherance of the NCBR Enterprise and to enrich the Individual Defendants themselves, as well as RICO conspiracy, violations of the Texas Deceptive Trade Practices—Consumer Protection Act ("DTPA"), common law fraud, and other torts, resulting in the unconscionably overpriced coin sales to Ms. Hales and her resulting damages.

**3.** Defendant ***Turner M. Jones*** is a principal/director of NCBR, who maintained an interest in, masterminded, controlled, and directed the NCBR Enterprise within the meaning of 18 U.S.C. § 1962(b) and both conducted and participated in the NCBR Enterprise's affairs so as to defraud Ms. Hales through a phony and fraudulent telemarketing "Don Everhart Signature Series" "certified

---

[1] Defendant Nationwide Coin & Bullion Reserve, Inc. is the RICO enterprise. Plaintiff is not asserting claims against it as a RICO person. However, Plaintiff is asserting certain Texas state law claims against Nationwide Coin & Bullion Reserve, Inc. as detailed *infra*.

[2] On information and belief, NCBR and its telemarketing sales agent recorded the telephone conversations with Mr. Brownell and maintains all of those recorded telephone conversations to the present.

[3] According to NCBR's website, "Nationwide Coins is the proud and exclusive supplier of the Don Everhart collection [of 'Signature Series' Coins]. *See* [https://nationwidecoins.com/pages/don-everhart](https://nationwidecoins.com/pages/don-everhart) (accessed on the world wide web by Plaintiff's counsel on May 21, 2025). Don Everhart is a coin and medal engraver-medalist, and sculptor who has worked for the private Franklin Mint, as a freelance designer, and after 2004 worked for the United States Mint in Philadelphia.

modern bullion" coin investment scam which he devised, oversaw, and ran in conjunction with Defendant Kuykendall and others.

**4.** Defendant ***Lawrence P. Kuykendall, Sr.*** is a principal/director of NCBR, who maintained an interest in, masterminded, controlled, and directed the NCBR Enterprise within the meaning of 18 U.S.C. § 1962(b) and both conducted and participated in the NCBR Enterprise's affairs so as to defraud Ms. Hales through a phony and fraudulent telemarketing "Don Everhart Signature Series" "certified modern bullion" coin investment scam which he devised, oversaw, and ran in conjunction with Defendant Jones and others.

**5.** Defendant ***Dorian J. Ausby*** is, or at all times pertinent was, a telemarketing employee, agent, and/or representative of NCBR, who maintained an interest in and/or conducted or participated in the conduct of the NCBR Enterprise within the meaning of 18 U.S.C. § 1962(b) and was the principal telemarketer and "investment advisor" to Ms. Hales and, as Ms. Hales's principal point-of-contact with NCBR, directly participated in the NCBR Enterprise's misrepresentations and transactions with Ms. Hales that defrauded her by way of a phony and fraudulent telemarketing "Don Everhart Signature Series" "certified modern bullion" coin investment scam which he ran in conjunction with Defendants Jones, Kuykendall, and possibly others.

**6.** Plaintiff ***Catherine Hales*** is an 78-year-old California resident who fell prey to a fraudulent scheme devised by and conducted under the direction and management of Jones and Kuykendall and implemented by Ausby in furtherance of the NCBR Enterprise which was facilitated by and conducted through use of the U.S. mail and U.S. wires in violation of 18 U.S.C. §§ 1341, 1343 and which resulted in actual and consequential damages to Ms. Hales of at least **EIGHT HUNDRED FIFTY-ONE THOUSAND FOUR HUNDRED SIXTY-FIVE AND 37/100**

**DOLLARS ($851,465.37)** as part of a closed-ended pattern, or, in the alternative, an open-ended[4] nationwide, systematic pattern, of predicate acts of fraud and accomplished through telemarketing sales and interstate shipments of unconscionably, fraudulently overpriced "Don Everhart Signature Series" "certified modern bullion" coins to Ms. Hales and others.

**7.** Mrs. Hales seeks to recover of and from the Defendants, jointly and severally, actual damages, consequential damages, exemplary damages, treble damages under 18 U.S.C. § 1964 and/or for knowing or intentional violations of the Texas DTPA pursuant to Tex. Bus. & Com. Code § 17.50, pre- and post-judgment interest, attorneys' fees, litigation expenses, and costs of suit.

## **PARTIES, JURISDICTION AND VENUE**

### *The Parties*

**8.** Plaintiff **Catherine Hales** is a citizen and resident of the State of California.

**9.** Defendant **Nationwide Coin & Bullion Reserve, Inc.** ("NCBR") is a privately held domestic corporation organized under the laws of the State of Texas with its registered office address and principal office in Texas at 2000 S. Dairy Ashford Road, Suite 170, Houston, Harris County, Texas 77077-5741. Nationwide Coin & Bullion Exchange, Inc. may be served with process by serving

[4] Catherine Hales is not alone, as she joins numerous other elderly telemarketing customer complaining of substantially similar telemarketing "investment" schemes by the Defendants involving fraudulently overpriced "Signature Series" coins in furtherance of the NCBR Enterprise. *See, e.g., John L. Hatch v. Turner M. Jones, et al.*; Civil No. 4:18-cv-4146, in the United States District Court for the Southern District of Texas; *June Thomas v NCBR*, et al, No. 2018-89093, In the 270th JDC, Harris County, Texas; *Nationwide Coin & Bullion Inc. v Walter R. Bogan, Jr. , et al*, No. 2024-16880, In the 164th JDC, Harris County, Texas; *William Ciarlone v NCBR, et al*., No. 2019-57418, In the 281st JDC, Harris County, Texas. The foregoing demonstrates an ongoing, open-ended RICO pattern; *Pierce Brownell v NCBR,* Civil Action No. 4:25-cv-2520, in the United States District Court for the Southern District of Texas. Upon information and belief, multiple other victims exist whose identity are cloaked due to confidential settlements that contain non-disparagement agreements.

its Registered Agent for Service, C.T. Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. Nationwide Coin & Bullion Reserve, Inc. received monies—and facilitated the receipt of monies—by its principals/directors, Turner M. Jones and Lawrence P. Kuykendall, that were defrauded and stolen from Ms. Hales by Defendants Jones, Kuykendall, and NCBR telemarketing sales agent, Ausby (and possibly others).

**10.** Defendant **Turner M. Jones** ("Jones") is a Texas citizen and resident of Harris County, Texas. He may be served at his residential address, 15758 Fleetwood Oaks Drive, Houston, Harris County, Texas. Jones is a principal/director of, and operated, managed, and controlled, NCBR. Jones directed and participated in the conduct of the affairs of the NCBR Enterprise and enriched himself, funded his own business activities, and funded the business activities of the NCBR Enterprise with money defrauded and stolen from Ms. Hales, and others, through and by way of a pattern of racketeering activity.

**11.** Defendant **Lawrence P. Kuykendall, Sr.** ("Kuykendall") is a Texas citizen and resident of Harris County, Texas. He may be served at his residential address, 4707 Wildhorse Court, Missouri City, Fort Bend County, Texas 77459. Kuykendall is a principal/director of, and operated, managed, and controlled, NCBR. Jones directed and participated in the conduct of the affairs of the NCBR Enterprise and enriched himself, funded his own business activities, and funded the business activities of the NCBR Enterprise with money defrauded and stolen from Ms. Hales, and others, through and by way of a pattern of racketeering activity.

**12.** Defendant **Dorian Ausby** ("Ausby") is a Texas citizen and resident of Harris County, Texas with a last known residential address of 15103 Windsdowne Lane, Cypress, Harris County, Texas, 77429 and a last known business address of 2000 S. Dairy Ashford Road, Suite 170, Houston, Harris County, Texas 77077-5741. Ausby is, or at all times pertinent, was a telemarketing sales

agent, “executive sales advisor,” and “investment advisor” for NCBR. Ausby participated in the conduct of the affairs of the NCBR Enterprise and enriched himself, funded his own business activities, and funded the business activities of the NCBR Enterprise with money defrauded and stolen from Ms. Hales, and others, through and by way of a pattern of racketeering activity.

## *Jurisdiction and Venue*

**13.** This Court has jurisdiction of this case as a federal question pursuant to 28 U.S.C. § 1331 and 18 U.S.C. §1964(c), RICO’s civil damages provision. In addition, the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 insofar as they are so related to the federal claims that they form part of the same case or controversy and arise from the same nucleus of operative facts.

**14.** In addition, or else in the alternative, this Court has diversity jurisdiction over Plaintiff’s claims pursuant to 28 U.S.C. § 1332(a), as Plaintiff is a citizen of California, and Defendants all are citizens of states other than California, and the amount in controversy exceeds $75,000 exclusive of interest, costs, and attorneys’ fees.

**15.** This Court has *in personam* jurisdiction over all Defendants because at all relevant times Defendants conducted their business and fraudulent activities from the NCBR offices in this District. Further, at all times pertinent, Defendants resided, maintained citizenship, were found, had agents, and are amenable to service in this District.

**16.** Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## PROLOGUE: THE COIN FRAUD INDUSTRY AND THE NCBR ENTERPRISE

### A. Primer: the Coin *Fraud* Industry

**17.** While no one disputes that there are upstanding, reputable precious metals dealers, a criminal subset (the "coin *fraud* industry") operating in the penumbra of those reputable dealers has been a longstanding problem. In late 1983 and early 1984, federal and state authorities initiated a long-awaited crackdown on precious metals dealers operating fraudulent "boiler room" schemes across the country. These precious metals fraudsters and racketeers had bilked investors out of several hundred million dollars.[5] Banking on customers' lack of knowledge, and using the nuances of coin collecting, grading, historical factors, and mint populations, unethical coin dealers continue to confuse and confound the average consumer with lies and deceptive claims of significant investment returns and bargains, often rising to the level of, and culminating in, outright fraud and counterfeiting. The United States Senate and various Federal and State agencies and commissions have investigated, and continue to investigate, the criminal underbelly of the precious metals industry.

### B. The Coin Fraudsters Prey Upon Seniors.

**18.** In 2014, a United States Senate Special Committee on Aging conservatively estimated that more than "*10,000 Americans have been victimized through [coin fraud] schemes, with losses around $300 million.*"[6] The U.S. Senate Report further revealed that the "*overwhelming number of*

---

[5] *See Commodity Investment Fraud II, Hearings Before the Permanent Subcommittee on Investigations of the Senate Committee on Governmental Affairs,* 98th Cong., 2d Sess. 145-88 (1984)*; see also War on Florida Boiler Rooms,* N.Y. Times, Nov. 14, 1983; *Regulating Bullion Dealers,* N.Y. Times, Oct. 31, 1983; *Senate to Study Gold Dealers,* N.Y. Times, Oct. 27, 1983; *Bullion Fraud: Who Protects the Investor?,* Chicago Tribune, Oct. 25, 1983.

[6] *See Exploring the Perils of the Precious Metals Market*, U.S. Senate Special Committee on Aging, *https://www.aging.senate.gov/download/precious-metals-market-committee-staff-investigation*, at 17 (hereinafter "US Senate Report"*)*.

*victims in precious metal fraud are seniors*."[7] Likewise, the FBI has found that corrupt coin dealers intentionally target seniors specifically "*because they [are] elderly and [the dealers] thought [they] could get away with it"* and that, while the amounts defrauded as to any individual elderly customer may seem small in comparison to certain other more high profile financial frauds, "*it represents a great deal to the victims – it was one man's life savings.*"[8] In fact, most of the fraud advisories and enforcement actions by the Federal and State agencies focus on the financial exploitation of the elderly at the hands of fraudulent coin dealers.[9]

**19.** The Texas Attorney General has issued a precious metals fraud consumer alert directed especially at seniors entitled: "Investing in Gold Coins: Consumers Should Do Their Homework Before Investing in Gold Coins"[10] which includes a list of "tips to avoid becoming a victim of fraud." One of those tips is particularly appropriate for this case in that the State of Texas declares that *"If coins you bought as an investment would have to double or triple in value before any gain could be realized, you may have been a victim of fraud."*[11]

**20.** Similarly, the New York Attorney General published a consumer alert specifically warning against "**Coin Swindles**" in which she warns that: "*[s]o called 'rare coins' are often sold to unwary investors who are led to believe that they are a good investment that will increase in value over the*

---

[7] *See* US Senate Report at 16.

[8] *See Fraudster Targeted Elderly Victims*" https://www.fbi.gov/news/stories/the-case-of-the-corrupt-coin-dealer.

[9] *See, e.g.*, https://dfpi.ca.gov/2022/02/01/dfpi-sues-to-stop-68-million-precious-metals-and-coin-fraud-targeting-elderly/.

[10] *See* https://www.texasattorneygeneral.gov/consumer-protection/investing-gold-coins.

[11] See Table 1 column on "% Markup" where Defendants systematically sold their victims over-priced coins that had to more than double or triple in value to recover their investment. See, ¶ 28, infra.

*years. Representations made about the expected increase in the value of these coins are almost always untrue and part of a scam perpetrated against unsophisticated, often elderly victims*."[12]

**21.** Jones and Kuykendall operations of the NCBR Enterprise is a textbook example of a coin telemarketing scheme to financially abuse elderly customers as heralded by the government and regulatory "precious metals fraud" and "coin swindle" warnings.

**FACTS COMMON TO ALL OF Ms. HALES' CAUSES OF ACTION**

**22.** Plaintiff Catherine Hales is a 78-year-old California citizen and resident who lost a significant amount of money as a direct result of being conned into "investing" in unconscionably overpriced "Don Everhart Signature Series" "certified modern bullion" coins and was thus defrauded by the Defendants.

**23.** Defendant Turner M. Jones is a principal/director of Defendant NCBR and is the mastermind of the NCBR Enterprise, who scammed and defrauded the elderly Ms. Hales into making some sixty-seven (67) individual "Don Everhard Signature Series" "certified modern bullion" coins involving 37 separate transactions of gold, silver, and platinum coins from NCBR between June 2022 and February 2023. Through misrepresentations as to the qualities, attributes, values, and expected, near term "investment" returns of the coins, Jones, his "partner," Kuykendall, and front-line telemarketing sales agent and "investment advisor," Ausby, scammed Ms. Hales into "investing" a total of Six Hundred Twenty-Three Thousand Four Hundred Forty-Five And 00/100 Dollars ($623,445.00) by interstate fund transfers to NCBR for "Don Everhart Signature Series"

[12] *See https://ag.ny.gov/common-investment-scams*. Other state attorneys general have also issued precious metals fraud consumer alerts. *See, e.g.,https://www.ag.state.mn.us/consumer/publications/-CoinDealers.asp* (Minnesota), and *https://www.myfloridalegal.com/consumer-protection/how-to-protect-yourself-rare-coin-investment-schemes* (Florida).

"certified modern bullion" gold, silver, and platinum coins that had a combined fair market value at the time of sale of just One Hundred Eleven Thousand Forty-One and 23/100 ($111,041.23), thereby causing Ms. Hales to incur immediate losses at the time of purchase of **FIVE HUNDRED TWELVE THOUSAND FOUR HUNDRED THREE AND 77/100 DOLLARS (512,403.77)**.

**24.** In late 2021 and early 2022, Ms. Hales was monitoring the state of the global and U.S. economies, as well as her own financial situation, and she began looking into putting some of her savings into precious metal bullion as a safe investment and a hedge against inflation.

**25.** On or about May 28, 2025, Ausby, a telemarketing sales representative for NCBR telephoned Ms. Hales and introduced himself as a precious metals expert and "investment advisor." Ms. Hales expressed interest in investing in bullion coins, but admitted that she knew little about the precious metal market. Ausby immediately shifted the conversation away from bullion and began hard-selling "certified bullion" as a better investment vehicle and, in particular, the "Don Everhart Signature Series" coins as providing "the best value" and higher return on "investment" than plain bullion coins. Ausby marketing to Ms. Hales to convince her to purchase the certified bullion coins used these false claims:

- That the "Everhart Signature coins" were a "good investment";
- That the "Everhart Signature coins" were "rare" or unique";
- That the "Everhart Signature coins" were "of limited population";
- That the "Everhart Signature coins" were specially priced "below dealer's cost";
- That the "Everhart Signature coins" were had been appraised two or three times the "discounted price" offered;
- That the "Everhart Signature coins" were "guaranteed to increase in value" in a short period of time;

- That Ms. Hales "needed to act now" or else she would "lose out";
- That Ms. Hales needed to "take advantage of a unique or once in a lifetime opportunity";
- That "certified modern bullion" "Everhart Signature coins" were coins were particularly good "investment" vehicles;
- That assembling sets or collections of "Everhart Signature coins" would result in Ms. Hales' initial investment increasing two or three times in value in a short period of time;
- That the Price Guide value of the "Everhart Signature coins" were fair market values and the price being offered on the coins below the published Price Guide guaranteed an immediate appreciation in value; and,
- That precious metal coins were a safe haven and sure hedge against US and global economic downturns or collapse[13]

**26.** Relying on Ausby's recommendations as to the qualities and "investment potential" of "Don Everhart Signature Series" coins, Ms. Hales made an initial purchase of ten (10) "Don Everhart Signature Series" certified modern Gold American Eagle bullion coins. To induce Ms. Hales, Ausby also included sales of four "raw" gold bullion coins, and 12 certified silver bullion coins, and 100 raw Silver American Eagle bullion coins. These purchases totaled $100,000.00.

**27.** Having convinced Ms. Hales to make that first purchase, Ausby began telephoning Ms. Hales frequently and regularly hawking and pressuring her to take advantage of "better and better" purported "deals" and convincing her to take advantage of NCBR's "discounted" pricing on the

[13] The sheer number of telemarketing calls and coin purchases, Ausby's professional con man "patter," and Ms. Hales' advanced age make it difficult, if not impossible, for Ms. Hales to remember which specific misrepresentations Ausby made as to which specific coins. Attempts at such specificity is further complicated by the very nature of telemarketing where Ms. Hales had difficulty following representations while personally viewing the coins Ausby was marketing to her and about which he was making representations until after the fact.

"rare" and "unique" "Don Everhart Signature Series" "certified modern bullion" coins as "investments."

**28.** Ausby's apparent knowledge and expertise pulled Ms. Hales in and convinced her to follow Ausby's "investment" recommendations and continue to purchase additional "Don Everhart Signature Series" "certified modern bullion" gold, platinum, and silver coins from NCBR. Embedded immediately below is **TABLE 1** which provides the details of the fraudulent, unconscionable pricing of each of Ms. Hales's coin purchases from NCBR made in reliance upon the "investment" advice, misrepresentations as to value, and high-pressure sales tactics of NCBR's telemarketing sales agent, Ausby. Following the "sales script" and training formulated by his bosses, NCBR principals/directors Jones and Kuykendall, Ausby's scripted telephone spiel and misrepresentations as to the fair market prices and "investment opportunities" of the "Don Everhart Signature Series" coins was effective in convincing Ms. Hales to "invest" $623,445.00 in sixty-seven (67) individual "Don Everhard Signature Series" "certified modern bullion" coins involving 37 separate transactions between June 2022 and February 2023, to wit:

**TABLE ONE**

**NCBR'S FRAUDULENT OVER-CHARGING FOR "DON EVERHART SIGNATURE SERIES" COINS**

| DATE | Invoice | Description | # Items | Purchase Price Extended | FMV Extended | Losses to Plaintiff | % Markup |
|---|---|---|---|---|---|---|---|
| 6/7/2022 | 10894 | 1986 $50 GAE MS69 Everhart | 1 | $ 9,995.00 | $ 2,035.00 | $ 7,960.00 | 391% |
| 6/7/2022 | 10894 | 2000 $10 Bi-metallic Comm'n MS70 Everhart | 1 | $ 8,995.00 | $ 1,225.00 | $ 7,770.00 | 634% |
| 6/7/2022 | 10894 | 2013 GAB RevPF70 Everhart | 1 | $ 15,045.00 | $ 2,340.00 | $ 12,705.00 | 543% |
| 6/7/2022 | 10894 | 2014 $5 Gold Comm HoF PF70 Everhart | 1 | $ 4,050.00 | $ 468.00 | $ 3,582.00 | 765% |
| 6/7/2022 | 10894 | 2015 $100 Gold Liberty HR MS70 Everhart | 1 | $ 14,995.00 | $ 2,400.00 | $ 12,595.00 | 525% |
| 6/7/2022 | 10894 | 2021 $50 GAE T1 MS70 Everhart | 1 | $ 10,830.00 | $ 2,528.29 | $ 8,301.71 | 328% |
| 6/7/2022 | 10894 | 2022 $5 GAE MS70 Everhart | 1 | $ 995.00 | $ 259.31 | $ 735.69 | 284% |
| 6/7/2022 | 10894 | 2022 $10 GAE MS70 Everhart | 1 | $ 1,995.00 | $ 648.28 | $ 1,346.72 | 208% |
| 6/7/2022 | 10894 | 2022 $25 GAE MS70 Everhart | 1 | $ 4,995.00 | $ 1,296.56 | $ 3,698.44 | 285% |
| 6/7/2022 | 10894 | 2022 $50 GAE MS70 Everhart | 1 | $ 9,995.00 | $ 2,528.29 | $ 7,466.71 | 295% |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6/7/2022 | 10894 | 2019 $1 Silver Apollo PF70 Everhart (5 oz) | 1 | $ 1,581.00 | $ 528.00 | $ 1,053.00 | 199% |
| 6/7/2022 | 10894 | 2021-W $1 SAE T2 Adv Rel PF70 Everhart | 1 | $ 2,015.00 | $ 161.00 | $ 1,854.00 | 1152% |
| 6/7/2022 | 10894 | 2022 $1 SAE MS70 Everhart | 10 | $ 3,250.00 | $ 1,150.00 | $ 2,100.00 | 183% |
| 6/17/2022 | 11186 | 2022 GAE 4-coin set MS70 FDOI Everhart | 1 | $ 16,000.00 | $ 4,425.83 | $ 11,574.17 | 262% |
| 1/9/2023 | 18394 | 1986 $50 GAE MS70 Everhart | 5 | $ 99,975.00 | $ 18,600.00 | $ 81,375.00 | 438% |
| 1/9/2023 | 18394 | 1986 $50 GAE PF70 Everhart | 2 | $ 25,000.00 | $ 5,280.00 | $ 19,720.00 | 373% |
| 1/9/2023 | 18394 | 1988 $50 GAE PF70 Everhart | 4 | $ 49,980.00 | $ 9,828.00 | $ 40,152.00 | 409% |
| 1/9/2023 | 18394 | 1989 $50 GAE MS69 Everhart | 1 | $ 23,202.00 | $ 1,970.00 | $ 21,232.00 | 1078% |
| 1/9/2023 | 18394 | 1989 $25 GAE MS70 Everhart | 1 | $ 37,250.00 | $ 5,160.00 | $ 32,090.00 | 622% |
| 1/9/2023 | 18394 | 1989 $10 GAE MS70 Everhart | 1 | $ 8,495.00 | $ 2,220.00 | $ 6,275.00 | 283% |
| 1/9/2023 | 18394 | 1989 $5 GAE MS70 Everhart | 1 | $ 1,410.00 | $ 900.00 | $ 510.00 | 57% |
| 1/9/2023 | 18394 | 1990 $5 GAE MS69 Everhart | 1 | $ 1,410.00 | $ 288.00 | $ 1,122.00 | 390% |
| 1/9/2023 | 18394 | 1990 $10 GAE MS69 Everhart | 1 | $ 8,320.00 | $ 1,860.00 | $ 6,460.00 | 347% |
| 1/9/2023 | 18394 | 1990 $25 GAE MS69 Everhart | 1 | $ 22,125.00 | $ 3,806.00 | $ 18,319.00 | 481% |
| 1/9/2023 | 18394 | 1990 $50 GAE MS69 Everhart | 1 | $ 8,995.00 | $ 2,040.00 | $ 6,955.00 | 341% |
| 1/9/2023 | 18394 | 2000 $10 Bimetal LoC Comm PF70 Everhart4 | 4 | $ 28,780.00 | $ 4,440.00 | $ 24,340.00 | 548% |
| 1/9/2023 | 18394 | 2008 GAE 4-coin Set PF70 | 1 | $ 42,500.00 | $ 4,501.46 | $ 37,998.54 | 844% |
| 1/9/2023 | 18394 | 2021-W $10 GAE T2 MS70 Everhart | 1 | $ 39,995.00 | $ 4,440.00 | $ 35,555.00 | 801% |
| 1/9/2023 | 18394 | 1997 $100 PtAE Pf70 Everhart | 2 | $ 20,490.00 | $ 4,080.00 | $ 16,410.00 | 402% |
| 1/9/2023 | 18394 | 2013 $100 PtAE Pf70 Everhart | 1 | $ 11,495.00 | $ 2,220.00 | $ 9,275.00 | 418% |
| 1/9/2023 | 18394 | 2014 $100 PtAE Pf70 Everhart | 1 | $ 20,503.00 | $ 3,001.20 | $ 17,501.80 | 583% |
| 1/18/2023 | 18645 | 2008 GAB 4-coin set PF70 Everhart | 1 | $ 42,500.00 | $ 9,360.00 | $ 33,140.00 | 354% |
| 1/18/2023 | 18645 | 2014 $50 Gold Comm HoF PF70 Everhart | 1 | $ 2,764.00 | $ 481.00 | $ 2,283.00 | 475% |
| 2/3/2023 | 19127 | 2008-$10 PtAE PF70 NGC EVERHART | 1 | $ 2,101.00 | $ 372.00 | $ 1,729.00 | 465% |
| 2/3/2023 | 19127 | 2008-$25 PtAE PF70 NGC EVERHART | 1 | $ 3,750.00 | $ 540.00 | $ 3,210.00 | 594% |
| 2/3/2023 | 19127 | 2008-$50 PtAE PF70 NGC EVERHART | 1 | $ 7,133.00 | $ 1,140.00 | $ 5,993.00 | 526% |
| 2/3/2023 | 19127 | 2008-$100 PtAE PF70 NGC EVERHART | 1 | $ 10,536.00 | $ 2,520.00 | $ 8,016.00 | 318% |
| | | | | **$ 623,445.00** | **$ 111,041.23** | **$ 512,403.77** | **461%** |

**29.** Mrs. Hales reasonably relied upon NCBR's claim and Ausby's purported "expertise" and "investment" advice and representations and had neither knowledge, nor reason to know, of Defendants' fraudulent and deceptive sales practices until she happened to talk to another coin dealer and learned that the amounts she paid for her coins seemed to be several times the coins' fair market value. Surprised by this information, Ms. Hales had the coins professionally appraised to confirm their actual market values. In January 2025, an expert numismatist appraiser informed Ms. Hales that the combined fair market value of the coins she purchased from the Defendants was

only One Hundred Eleven Thousand Forty-One and 23/100 ($111,041.23), resulting in an immediate loss to Ms. Hales of **Five Hundred Twelve Thousand Four Hundred Three and 77/100 Dollars (512,403.77)** at the moment Defendants sold her the coins.[14] The amount Ms. Hales paid for the coins represents an ***average*** **461% markup over fair market value,** with one coin (2021-W $1 Silver American Eagle Type 2, Advanced Release PF70, signed by Everhart) sold to Ms. Hales by NCBR at an outrageous *1152% markup*[15], an amount that is not just unreasonable, but unconscionable. To put it in perspective, in order for Ms. Hales just to recover the "invested" cost of the NCBR "Don Everhart" coins (i.e. for her to "break even") would require the coins to appreciate over more than quadruple in value.

**30.** However, as bad as NCBR's swindle of Ms. Hales was on the "front end," that is not the extent of her damages. As noted above, Ms. Hales's interest and intent in purchasing precious metal coins was limited to simple bullion coins, and those are what she had intended to acquire before she fell prey to Ausby's rehearsed and false presentations as to the benefits of "Don Everhart Signature Series" "certified modern bullion" coins as "investment vehicles".

**31.** When NCBR and Ausby conned Ms. Hales into purchasing the "Don Everhart Signature Series" "certified modern bullion" coins rather than gold bullion coins, she suffered a second separate and distinct injury, namely the loss of the anticipated gains from her intended "investment" in the coins. Although Ms. Hales initially sought to purchase gold bullion, NCBR sales agent, Ausby, subjected her to false claims about the "investment" potential of the "Don Everhart Signature Series" "certified modern bullion" coins to fraudulently induce her to purchase those coins instead. Rather than investing $623,445.00 in 233 ounces of gold bullion as Ms. Hales

[14] *See* Table One, *supra*.
[15] See ¶ 19, supra.

had intended, Defendants "up-sold" Ms. Hales to invest in the various "Don Everhart Signature Series" "certified modern bullion" coins which amounted to just over 25 ounces of gold and a few ounces of other lower value precious metals.

**32.** On June 7, 2022, gold had a spot price of $1,852.23 an ounce,[16] which means Ms. Hales could have purchased approximately 233 $50 (one-ounce) gold bullion coins at market value of $1,941.00 each.[17] By July 7, 2025, gold's spot price had risen to $3,307.50. Had Defendants not knowingly and intentionally made false claims and misdirected Ms. Hales into "investing" in the "Don Everhart Signature Series" coins, and had she instead purchased one-ounce gold bullion coins as she had intended, she would have earned $1,366.50 per ounce for a total of **Three Hundred Eighteen Thousand Three Hundred Ninety-Four and 50/100 dollars ($318,394.50)** *in addition to* recouping her initial investment. Unfortunately, Defendants' inducing her to invest in "Don Everhart Signature Series" coins, has resulted in Ms. Hales's realizing a gain of just $50,325.17 on market changes, representing a net loss to Ms. Hales on her "investment" in precious metal bullion in the amount of **$268,069.33**. This is demonstrated and summarized in the following Table Two:

**TABLE TWO**
**PLAINTIFF'S LOST RETURN ON INVESTMENTS IN "SIGNATURE SERIES" COINS**

| DATE | Description | Total Precious Metal | Spot DOP | SPOT on 7/7/2025 | Delta on Spot | ROI % Lost | Investment Lost |
|---|---|---|---|---|---|---|---|
| 6/7/2022 | 1986 $50 GAE s MS69 Everhart | 1 | $ 1,852.23 | $ 3,307.50 | $ 1,455.27 | 79% | $ 1,455.27 |
| 6/7/2022 | 2013 GAB RevPF70 Everhart | 1 | $ 1,852.23 | $ 3,307.50 | $ 1,455.27 | 79% | $ 1,455.27 |
| 6/7/2022 | 2014 $5 Gold Comm Hall of Fame PF70 | 0.1 | $ 1,852.23 | $ 3,307.50 | $ 1,455.27 | 79% | $ 145.53 |
| 6/7/2022 | 2015 $100 Gold Liberty HR MS70 Everhart | 1 | $ 1,852.23 | $ 3,307.50 | $ 1,455.27 | 79% | $ 1,455.27 |
| 6/7/2022 | 2021 $50 GAE T1 MS70 Everhart | 1 | $ 1,852.23 | $ 3,307.50 | $ 1,455.27 | 79% | $ 1,455.27 |

---

16 *See* https://www.kitco.com/price/fixes/kitco-fix.

17 Indeed, on June 7, 2022, Ms. Hales bought four (4) common date $50 Gold American Eagle from Defendants for $1,941.00 each. Instead of purchasing 233 ounces of gold, she was bamboozled into buying just over 25 ounces of over-priced "Don Everhart Signature Series" gold coins.

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/7/2022 | 2022 $5 GAE MS70 Everhart | 0.1 | $ | 1,852.23 | $ | 3,307.50 | $ | 1,455.27 | 79% | $ | 145.53 |
| 6/7/2022 | 2022 $10 GAE MS70 Everhart | 0.25 | $ | 1,852.23 | $ | 3,307.50 | $ | 1,455.27 | 79% | $ | 363.82 |
| 6/7/2022 | 2022 $25 GAE MS70 Everhart | 0.5 | $ | 1,852.23 | $ | 3,307.50 | $ | 1,455.27 | 79% | $ | 727.64 |
| 6/7/2022 | 2022 $50 GAE MS70 Everhart | 1 | $ | 1,852.23 | $ | 3,307.50 | $ | 1,455.27 | 79% | $ | 1,455.27 |
| 6/7/2022 | 2019 $1 Silver Apollo Comm PF70 | 5 | $ | 22.24 | $ | 36.42 | $ | 14.18 | 64% | $ | 70.90 |
| 6/7/2022 | 2021-W $1 SAE T2 Adv Rel PF70 Everhart | 1 | $ | 22.24 | $ | 36.42 | $ | 14.18 | 64% | $ | 14.18 |
| 6/7/2022 | 2022 $1 SAE MS70 Everhart | 10 | $ | 22.24 | $ | 36.42 | $ | 14.18 | 64% | $ | 141.80 |
| 6/17/2022 | 2022 Gold American Eagle set MS70 FDOI | 1.85 | $ | 1,840.26 | $ | 3,307.50 | $ | 1,467.24 | 80% | $ | 2,714.39 |
| 1/9/2023 | 1986 $50 GAE MS70 Everhart | 5 | $ | 1,871.71 | $ | 3,307.50 | $ | 1,435.79 | 77% | $ | 7,178.95 |
| 1/9/2023 | 1986 $50 GAE PF70 Everhart | 2 | $ | 1,871.71 | $ | 3,307.50 | $ | 1,435.79 | 77% | $ | 2,871.58 |
| 1/9/2023 | 1988 $50 GAE PF70 Everhart | 4 | $ | 1,871.71 | $ | 3,307.50 | $ | 1,435.79 | 77% | $ | 5,743.16 |
| 1/9/2023 | 1989 $50 GAE MS69 Everhart | 1 | $ | 1,871.71 | $ | 3,307.50 | $ | 1,435.79 | 77% | $ | 1,435.79 |
| 1/9/2023 | 1989 $25 GAE MS70 Everhart | 0.5 | $ | 1,871.71 | $ | 3,307.50 | $ | 1,435.79 | 77% | $ | 717.90 |
| 1/9/2023 | 1989 $10 GAE MS70 Everhart | 0.25 | $ | 1,871.71 | $ | 3,307.50 | $ | 1,435.79 | 77% | $ | 358.95 |
| 1/9/2023 | 1989 $5 GAE MS70 Everhart | 0.1 | $ | 1,871.71 | $ | 3,307.50 | $ | 1,435.79 | 77% | $ | 143.58 |
| 1/9/2023 | 1990 $5 GAE MS69 Everhart | 0.1 | $ | 1,871.71 | $ | 3,307.50 | $ | 1,435.79 | 77% | $ | 143.58 |
| 1/9/2023 | 1990 $10 GAE MS69 Everhart | 0.25 | $ | 1,871.71 | $ | 3,307.50 | $ | 1,435.79 | 77% | $ | 358.95 |
| 1/9/2023 | 1990 $25 GAE MS69 Everhart | 0.5 | $ | 1,871.71 | $ | 3,307.50 | $ | 1,435.79 | 77% | $ | 717.90 |
| 1/9/2023 | 1990 $50 GAE MS69 Everhart | 1 | $ | 1,871.71 | $ | 3,307.50 | $ | 1,435.79 | 77% | $ | 1,435.79 |
| 1/9/2023 | 2008 4-coin GAE Proof Set PF70 ($5, $10, | 1.85 | $ | 1,871.71 | $ | 3,307.50 | $ | 1,435.79 | 77% | $ | 2,656.21 |
| 1/9/2023 | 2021-W with W $10 GAE Type 2 MS70 | 1 | $ | 1,871.71 | $ | 3,307.50 | $ | 1,435.79 | 77% | $ | 1,435.79 |
| 1/9/2023 | 1997 $100 PtAE Pf70 Everhart | 2 | $ | 1,087.24 | $ | 3,307.50 | $ | 2,220.26 | 204% | $ | 4,440.52 |
| 1/9/2023 | 2013 $100 PtAE Pf70 Everhart | 1 | $ | 1,087.24 | $ | 3,307.50 | $ | 2,220.26 | 204% | $ | 2,220.26 |
| 1/9/2023 | 2014 $100 PtAE Pf70 Everhart | 1 | $ | 1,087.24 | $ | 3,307.50 | $ | 2,220.26 | 204% | $ | 2,220.26 |
| 1/18/2023 | 2008 GAB 4-coin set PF70 Everhart | 1.85 | $ | 1,918.00 | $ | 3,307.50 | $ | 1,389.50 | 72% | $ | 2,570.58 |
| 1/18/2023 | 2014 $50 Gold Comm HoF PF70 Everhart | 1 | $ | 1,918.00 | $ | 3,307.50 | $ | 1,389.50 | 72% | $ | 1,389.50 |
| 2/3/2023 | 2008-$10 PtAE PF70 NGC EVERHART | 0.1 | $ | 979.29 | $ | 1,350.00 | $ | 370.71 | 38% | $ | 37.07 |
| 2/3/2023 | 2008-$25 PtAE PF70 NGC EVERHART | 0.25 | $ | 979.29 | $ | 1,350.00 | $ | 370.71 | 38% | $ | 92.68 |
| 2/3/2023 | 2008-$50 PtAE PF70 NGC EVERHART | 0.5 | $ | 979.29 | $ | 1,350.00 | $ | 370.71 | 38% | $ | 185.36 |
| 2/3/2023 | 2008-$100 PtAE PF70 NGC EVERHART | 1 | $ | 979.29 | $ | 1,350.00 | $ | 370.71 | 38% | $ | 370.71 |
| | net market gain realized | | | | | | | | | **$** | **50,325.17** |
| 7/7/2025 | $50 Gold American Eagle Bullion (1 Oz) | 233 | $ | 1,941.00 | $ | 3,307.50 | $ | 1,366.50 | | $ | 318,394.50 |
| | less actual net market gain | | | | | | | | | $ | (50,325.17) |
| | **Loss on Return on Investment** | | | | | | | | | **$** | **268,069.33** |

**33.** Thus, as a direct and proximate result of the knowing and intentional deceptive acts and practices of the Defendants, Ms. Hales has incurred total financial losses as follows:

$ 512,403.77 Initial loss suffered by purchasing over-priced coins (Table One)

$ 268,069.33 Net loss on return on investment (Table Two)

**$ 780,473.10** Total financial damages

**34.** As set out in detail above, Ausby, NCBR's telemarketing sales agent, "investment advisor," and member of the NCBR Enterprise, was the point man in a confidence scheme run on Ms. Hales to convince her to purchase grossly inflated "Don Everhart Signature Series" "certified modern bullion" coins as "investments" and thereby defraud and deceive Ms. Hales. The ultimate goal of

Jones, Kuykendall, and Ausby, and the primary, if not entire, business model of NCBR and the NCBR Enterprise as devised, set up, overseen, directed, operated, and controlled by Jones and Kuykendall is to defraud and impoverish elderly customers such as, and including, Ms. Hales, and by so doing to enrich themselves and further the NCBR Enterprise. As a direct and/or proximate result of the Defendants' above-described wrongful acts and practices, Ms. Hales has suffered (and continues to suffer) devastating economic damages, which Defendants refuse to remedy.

## CLAIMS FOR RELIEF/CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) FOR CONSPIRACY TO PARTICIPATE IN AND COMMIT A PATTERN OF MAIL AND WIRE FRAUDS
### (AGAINST DEFENDANTS JONES, KUYKENDALL AND AUSBY)

**35.** Plaintiff incorporates by reference the preceding paragraphs, and Count III, *infra*, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**36.** At all relevant times, Plaintiff was a "person" within the meaning of 18 U.S.C. § 1964(c).

**37.** At all relevant times, "NCBR" was an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

**38.** At all relevant times, Defendant Jones was a "person" within the meaning of 18 U.S.C. §§ 1962(b), 1962(c) and 1962(d).

**39.** At all relevant times, Defendant Kuykendall was a "person" within the meaning of 18 U.S.C. §§ 1962(b), 1962(c) and 1962(d).

**40.** At all relevant times, Defendant Ausby was a "person" within the meaning of 18 U.S.C. §§ 1962(b), 1962(c) and 1962(d).

**40.** Defendants Jones, Kuykendall, and Ausby as members of the NCBR Enterprise had a meeting of the minds and agreed to commit a series of mail and wire frauds constituting a pattern of

racketeering activity in violation of 18 U.S.C. § 1962(c) against Ms. Hales, and, on information and belief, other elderly citizens, as detailed *supra*, in violation of 18 U.S.C. § 1962(d). Defendants, Jones and Kuykendall each participate in the NCBR Enterprise by taking part in controlling and directing the affairs of said enterprise, and Ausby interacted directly with Plaintiff as a telemarketing sales agent, "investment advisor," "executive sales advisor" and representative of the NCBR enterprise, and Jones, Kuykendall, and Ausby, as members of the NCBR Enterprise, knowingly agreed to oversee, direct, and facilitate (Jones and Kuykendall) and/or commit (Ausby) the individual predicate acts of mail and wire fraud as part of the fraudulent scheme targeting Ms. Hales, in furtherance of the NCBR Enterprise and to enrich themselves.

**41.** This conspiracy violated 18 U.S.C. § 1962(c) in that it consisted of a pattern of racketeering activity, specifically multiple instances of mail fraud (in violation of 18 U.S.C. § 1341) and wire fraud (in violation of 18 U.S.C. § 1343). Jones, Kuykendall, and Ausby, as members, directors, and, at least in Ausby's case, a telemarketing sales agent, of the NCBR Enterprise, knew that the NCBR telemarketing sales practices and tactics were misleading and unlawful and would cause their elderly customers, including specifically Ms. Hales, to suffer damages that were reasonably foreseeable by them and/or anticipated as a substantial factor and a natural consequence of the predicate acts of fraud constituting their pattern of unlawful activity.

**42.** Jones, Kuykendall, and Ausby are members of the NCBR Enterprise and as co-conspirators are liable for all of the actions committed by all of the co-conspirators within the conspiracy and are liable for all of the damages sustained by Plaintiff that were caused by any of the members of the conspiracy, regardless of whether they were themselves directly involved in any *particular* aspect or predicate act of the NCBR Enterprise.

**43.** Jones' and Kuykendall's knowing and substantial assistance in Ausby's predicate acts of mail

and wire fraud and constitutes a pattern of unlawful activity conducted as members and representatives of the NCBR Enterprise and proximately and/or directly caused Plaintiff to suffer injury to her business and/or property within the meaning of 18 U.S.C. § 1964(c).

**44.** As a direct and proximate result of the violations set forth above, Ms. Hales has been injured, and Jones', Kuykendall's, and Ausby's 18 U.S.C. § 1962(d) conspiracy to violate 18 U.S.C. § 1962(c) is the proximate cause of this injury. Pursuant to the provisions of 18 U.S.C. § 1964(c), Ms. Hales is entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest and attorneys' fees.

## COUNT II
## VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) FOR, IN THE ALTERNATIVE, AIDING AND ABETTING MAIL FRAUD AND WIRE FRAUD (18 U.S.C. §§ 1341, 1343) (AGAINST DEFENDANTS JONES AND KUYKENDALL)

**45.** Plaintiff incorporates by reference the preceding paragraphs, and Count III, *infra,* including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**46.** At all relevant times, Plaintiff was a "person" within the meaning of 18 U.S.C. § 1964(c).

**47.** At all relevant times, "NCBR" was an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

**48.** At all relevant times, Defendant Jones was a "person" within the meaning of 18 U.S.C. §§ 1962(b), 1962(c) and 1962(d).

**49.** At all relevant times, Defendant Kuykendall was a "person" within the meaning of 18 U.S.C. §§ 1962(b), 1962(c) and 1962(d).

**50.** In addition, or else in the alternative, to the allegations in Counts I, *supra*, and III, *infra*, Plaintiff would show that, at minimum, Jones and Kuykendall are liable for aiding and abetting

the RICO mail and wire scheme against Plaintiff and other elderly telemarketing customers of NCBR.

**51.** Jones and Kuykendall are the principals and directors of the NCBR Enterprise who each take part in managing and operating the NCBR coin telemarketing operations and train, oversee, and supervise its "front line" telemarketer sales agents, including Ausby.

**52.** Jones and Kuykendall created, engineered, operate, and manage the NCBR Enterprise. Jones and Kuykendall clearly had knowledge of the "Don Everhart Signature Series" coin fraud scheme Ausby ran on Ms. Hales, as they at all times were "running the day-to-day business" of NCBR, were principals, officers, directors, and managers of NCBR's coin telemarketing operations, and because Ausby, and the other telemarketing sales agents had to confirm pricing of coins for sale with Jones and/or Kuykendall before closing any "deals." Further, since they were "running the business" of NCBR, Jones and Kuykendall undoubtedly had knowledge of the Cost of Goods Sold (COGS), actual market prices of coins (both "buy price" and "sell price), the prices paid for the coins by telemarketing customers, and the markups charged by NCBR versus acceptable industry markups. Both Jones and Kuykendall also received the proceeds from the fraudulent transactions with Ms. Hales, and the other elderly victims of the NCBR Enterprise, in the form of outrageous distributions and profits to themselves.

**53.** Jones' and Kuykendall's only potential defense to the knowledge prong of this aiding and abetting claim would be to plead deliberate ignorance.

**54.** Jones' and Kuykendall's substantial support of the fraud is clear from the fact that they set up the telemarketing infrastructure, had the "connections" to the coin industry—including obtaining "leads lists" and developing relationships with coin "wholesalers," and drafted (of assisted with

drafting or approved) the "sales scripts" utilized by the NCBR telemarketing sales agents, including Ausby.

**55.** At this stage of the litigation, prior to any discovery, and given the nature of the long-distance telemarketing industry, the details of the inner workings of NCBR's operations are peculiarly within the knowledge of the Defendants as to the finer details of each Defendant's alleged participation, Plaintiff has sufficiently pled facts as to each of the elements of aiding and abetting fraud against Jones and Kuykendall. Plaintiff also relies upon the "well-established principle that 'allegations may be based on information and belief when facts are particularly within the opposing party's knowledge,' provided that the plaintiff 'adduce[s] specific facts supporting a strong inference of fraud.'" [18] The facts set out above support an overwhelming inference of fraud perpetrated against Ms. Hales.

**56.** By remaining behind the scenes of the front line telemarketing in an oversight capacity, while not conducting direct communications with NCBR's telemarketing customers, Jones and Kuykendall attempted to shield themselves from liability by delegating the predicate acts of mail and wire fraud to other members of the enterprise who had direct telephonic contact with Ms. Hales while seeking to avoid directly committing any RICO predicate acts of mail or wire fraud against Ms. Hales, and NCBR's other elderly customers. At minimum, Jones and Kuykendall provided affirmative support for the scheme and had actual knowledge that their telemarketing sales agent underlings, as "foot soldiers" and front line members of the enterprise, would commit and were committing multiple predicate acts of mail and wire fraud against Ms. Hales, and other elderly victims of the NCBR Enterprise, and that the exorbitant financial fruits of those predicate acts of mail and wire fraud were directly benefiting Jones and Kuykendall as principals and

[18] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339–40 (5th Cir. 2008).

directors of the NCBR Enterprise through distributions being transferred by NCBR and from and through the NCBR Enterprise to themselves. Jones and Kuykendall, as operators and managers of the NCBR Enterprise, may be subject to RICO liability regardless of whether they personally committed any predicate acts of mail and wire fraud against Ms. Hales.[19]

**57.** As a direct and proximate result of the violations set forth above, Ms. Hales has been injured. Jones' and Kuykendall's knowing agreement to substantially support and further violations of 18 U.S.C. § 1962(c) in furtherance of the NCBR Enterprise is a proximate cause of this injury. Pursuant to the provisions of 18 U.S.C. § 1964(c), Ms. Hales is entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest, and attorneys' fees.

**COUNT III**
**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) FOR MAIL FRAUD AND WIRE FRAUD (18 U.S.C. §§ 1341, 1343) (AGAINST DEFENDANTS JONES, KUYKENDALL, AND AUSBY)**

**58.** Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**59.** At all relevant times, Plaintiff was a "person" within the meaning of 18 U.S.C. § 1964(c).

**60.** At all relevant times, "NCBR" was an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

**61.** At all relevant times, Defendant Jones was a "person" within the meaning of 18 U.S.C. §§ 1962(b), 1962(c) and 1962(d).

**62.** At all relevant times, Defendant Kuykendall was a "person" within the meaning of 18 U.S.C. §§ 1962(b), 1962(c) and 1962(d).

---

[19] *Salinas v. United States*, 522 U.S. 52, 63-64, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997) (if the "conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators").

**63.** By the acts described herein, Defendants Jones, Kuykendall, and Ausby, as members of the NCBR Enterprise, knowingly executed and/or intentionally participated in a scheme that defrauded, and was intended to defraud, Ms. Hales, and, on information and belief, numerous other elderly citizens, and employed the use of the mails and wires (telemarketing technology), as an integral part of said scheme and in furtherance thereof.

**64.** Central to, and in furtherance of, that scheme, and as described in detail above, Defendant Jones, in his capacity as principal and director of NCBR, Defendant Kuykendall, in his capacity as principal and director of NCBR, and Ausby, the principal telemarketing sales agent for NCBR, as a purported and self-professed coin expert and "investment advisor," as members of the NCBR Enterprise, authorized (Jones and Kuykendall) and made (Ausby) grossly inaccurate misrepresentations over the telephone to Ms. Hales as to the: (1) the fair market values of the "Don Everhart Signature Series" coins and (2) the "investment" potential of the "Don Everhart Signature Series" coins they marketed and advised Ms. Hales to purchase from NCBR and, taking advantage of her reliance on such misrepresentations, overcharged her for those coins by factors of dozens or hundreds of times more than any commercially supportable price for the coins in furtherance of the NCBR Enterprise and to enrich themselves.

**65.** Defendants' use of the wires in perpetrating the scheme was not merely incidental to the fraud and misrepresentations as to "Don Everhart Signature Series" coins but rather, given that the scheme was dependent upon telemarketing technology, was instrumental to the scheme in that Ms. Hales was never able to see Ausby in person, look her in the eye, and gauge his sincerity and veracity—much less physically examine the coins before purchase. Ausby further compounded the misrepresentations as to the coins' values and investment return potential by enclosing with each coin shipment via interstate "private or commercial interstate carrier" NCBR sales invoices

which repeated (and documented) the gross misrepresentations and fraudulent overpricing as to the coins offered and sold by Ausby as a telemarketing representative of NCBR to Ms. Hales as "investments, both to enrich himself, Jones, and Kuykendall and in furtherance of the NCBR Enterprise. Those NCBR sales invoices constitute correspondence sent or delivered by a private or commercial interstate carrier incorporating false and misleading statements regarding the values and fair market prices of the coins.

**66.** The means by which Defendants Jones, Kuykendall, and Ausby were able to remotely market the coins to Ms. Hales at such exorbitantly outrageous prices in furtherance of the scheme and thereby defraud her of a substantial portion of her savings is the unholy combination of the obscure inner workings of the retail precious metals telemarketing industry and the greed of Jones, Kuykendall, and Ausby as members of the NCBR Enterprise. That all interactions, communications, and sales transpired via wire (i.e. telephone) was not coincidental or happenstance. Rather, telemarketing enabled and defined the scheme.

**67.** As a direct and proximate result of the violations set forth and summarized in TABLE 1, *supra,* Ms. Hales has been injured. The multiple, repeated violations of 18 U.S.C. §§ 1341 and 1343 knowingly authorized (by Jones and Kuykendall) and perpetrated under their supervision (by Ausby) are the proximate cause of this injury. Pursuant to the provisions of 18 U.S.C. § 1964(c), Ms. Hales is entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest, and attorneys' fees.

**COUNT IV.**
**VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT (DTPA)**

**68.** The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length,

and, in addition, or else pleading in the alternative, alleges:

**69.** Mrs. Hales is a "consumer" under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), as defined by Section 17.45(4) of the Texas Business and Commerce Code. Likewise, each of the Defendants, NCBR, Jones, Kuykendall, and Ausby, is a "person" that may be sued pursuant to DTPA Section 17.45(3).

**70.** By their above-described wrongful acts and/or misrepresentations, the Defendants engaged in false, misleading, and deceptive acts and practices in violation of Sections 17.50(a)(1) and 17.46(b) of the Texas DTPA to wit: Defendants, *inter alia*,

a. represented that the "Don Everhart Signature Series" "certified modern bullion" coins have values that they do not have and that significant investor and collector demand exists for the coins that will cause them to appreciate in value, which demand does not exist and which appreciation in value will not happen (Section 17.46(b)(5));

b. represented that the coins are rare and/or unique and that investors and collectors are substantially desirous of the coins, which will cause the coins to appreciate significantly above the purchase prices paid by Ms. Hales in the near future, which appreciation in value will not occur (Section 17.46(b)(7));

c. failed to disclose the above-described information about the coins' values, desirability, and investment returns, which Defendants knew at the time of the transactions, and which the Defendants withheld with the intent to induce Plaintiff to purchase the coins and with knowledge that Plaintiff would not have purchased the coins had Defendants disclosed such information (Section 17.46(b)(24); and,

d. represented that the “Don Everhart Signature Series” “certified modern bullion” coins had certain qualities of investment value and appreciation that were misleading (Section 17.46(b)(2).

Ms. Hales relied on Defendants’ above-described misrepresentations and omissions in purchasing the coins to her financial detriment.

**71.** More specifically, Ausby, individually and in his capacity as a telemarketing sales agent and “investment advisor” for NCBR and under the direct supervision of Jones and utilizing Jones’ and Kuykendall’s “sales scripts” and with the knowing approval of NCBR principals and directors Jones and Kuykendall, knowingly and intentionally utilized unlawful, false, misleading, deceptive, and unconscionable high-pressure sales tactics and misrepresentations to convince Ms. Hales to purchase grossly overpriced “Don Everhart Signature Series” “certified modern bullion” coins from NCBR, through one or more of the following deceptive acts or practices, including:

a. Holding himself out as an “investment advisor” while having no investment expertise;

b. Holding himself out as a precious metals expert while having no actual education, certification, or extensive experience in valuation of coins;

c. Misrepresenting attributes, values, and investment potential of the coins;

d. Advising customers to purchase “unique,” “rare, and “desirable” “Don Everhart Signature Series” “certified modern bullion” coins, when, in fact, there is nothing unique or rare about the coins;

e. Using grading and marketing to deceptively sell bullion at a premium as some type of “modern numismatics” or “certified modern bullion,” even though there are very large populations of the high-grade coins at issue and/or the “certification” is commonly duplicated with minor expense;

f. Misrepresenting the market values of the coins to prevent or delay customers from determining the actual market price of the coins; and

g. Various other acts and practices that may be uncovered during discovery.

**72.** By their above-described wrongful acts and/or misrepresentations, the Defendants also violated Section 17.50(a)(2) of the Texas Business and Commerce Code by breaching the implied and/or express warranties they made to Plaintiff as to the coins' values and that significant investor and collector demand exists for the coins that will cause them to appreciate in value significantly above their purchase prices.

**73.** By the above-described wrongful acts and/or misrepresentations, Defendants also violated Section 17.50(a)(3) of the Texas Business and Commerce Code by engaging in unconscionable actions and/or an unconscionable course of action because such wrongful acts and practices took advantage of Ms. Hales's lack of knowledge, ability, experience, and/or capacity to a grossly unfair degree to her financial detriment.

**74.** Defendants also violated the DTPA for failing to comply with the Texas Business and Commerce Code (Texas Telephone Solicitation Act), Sections 302.101, 302.105, 302.151(11)-(16), 302.152, and 302.153(a)]. Pursuant to Section 301.104, the Plaintiffs are entitled to damages "not . . . less than the amount the consumer paid the person who sold the consumer goods or services through the use of the telephone solicitor, plus reasonable attorney's fees and court costs."

**75.** Based upon these violations, Ms. Hales seeks recovery of her actual damages, plus reasonable attorney's fees, and court costs. Ms. Hales also seeks treble damages pursuant to Section 302.303 and Section 17.50 of the Texas Business and Commerce Code.

## V.
## COMMON LAW FRAUD

**76.** The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length, and pleading in the alternative, alleges:

**77.** Via a lengthy series of oral misrepresentations created, composed, and scripted by Jones and Kuykendall who trained and supervised Ausby and high-pressure sales tactics (as set out in detail above), Ausby, individually and as a telemarketing sales agent of NCBR, and holding himself out as an "investment advisor," convinced Plaintiff to purchase grossly overpriced "Don Everhart Signature Series" "certified modern bullion" coins from NCBR as "investments" at exorbitant markups, thereby defrauding Plaintiff and enriching NCBR, himself and NCBR's principals/directors, Jones and Kuykendall.

**78.** Such false representations were invented by Jones and Kuykendall, who trained their front-line telemarketing sales staff, including Ausby, and knowingly and intentionally employed and made by Ausby, in his individual capacity and his capacity as a telemarketing sales agent of NCBR, and with his actual knowledge or, at the very least, in reckless disregard of Ms. Hales's rights and interests. Those false representations as to the fair market value and investment returns Plaintiff could expect to receive from the "Don Everhart Signature Series" "certified modern bullion" coins were made by Ausby with the approval of NCBR's principals and directors, Jones and Kuykendall, and with their full knowledge and under their direction.

**79.** Ausby, individually and as a telemarketing sales agent of NCBR, made the above-detailed false representations to Ms. Hales with the intent that she rely upon them and with full knowledge that such representations were false when made. Ms. Hales justifiably relied on those material and false representations when deciding to purchase the "Don Everhart Signature Series" "certified modern bullion" coins from NCBR which resulted in her financial injuries and the obscene

financial gain of NCBR, its principals and directors, Jones and Kuykendall, and Ausby. As a direct and/or proximate result of the false and misleading representations of NCBR's telemarketing sales agent Ausby, all of which were known to and approved and authorized by Jones and Kuykendall and are attributable to NCBR, Ms. Hales has suffered (and continues to suffer) damages arising from and related to the amounts greatly in excess of fair market values she paid NCBR for the "Don Everhart Signature Series" "certified modern bullion" coins, which has resulted in the theft and conversion of a significant portion of her savings at the hands of the Defendants, as well as mental anguish damages.

**COUNT VI**
**NEGLIGENT MISREPRESENTATION**

**80.** The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length, and pleading in the alternative, alleges that:

**81.** As set forth above, Ausby, while operating as a telemarketing sales representative of NCBR, and expressly representing himself to be a precious metal coin expert and "investment advisor," made certain representations (described in detail above) to Ms. Hales in the course of NCBR's business and in the "Don Everhart Signature Series" "certified modern bullion" coin "investment" transactions in which Ausby, Jones, Kuykendall, and NCBR had a substantial monetary interest. To the extent that the acts, omissions, and representations of Ausby to Plaintiff were determined not to rise to level of fraud, Plaintiff pleads in the alternative, that Ausby was, at minimum, negligent in making misrepresentations as to the fair market values and investment returns to be expected from the "Don Everhart Signature Series" "certified modern bullion" coins marketed and sold to Plaintiff by and on behalf of NCBR. Specifically, Ausby negligently supplied

false and misleading information that Ms. Hales justifiably relied upon in her decisions to purchase the grossly overpriced coins from NCBR.

**82.** Ausby failed to exercise reasonable care and competence in obtaining, confirming the accuracy of, and communicating information to Ms. Hales and/or making the above-described false and material misrepresentations as to the as to the fair market values and investment returns to be expected from the "Don Everhart Signature Series" "certified modern bullion" coins.

**83.** Mrs. Hales justifiably relied upon Ausby's negligent misrepresentations when she purchased the grossly overpriced coins from NCBR, which misrepresentations directly and/or proximately caused Ms. Hales to suffer significant damages to the financial benefit of NCBR, its principals and directors, Jones and Kuykendall, and telemarketing sales agent, Ausby. Ausby's wrongful conduct, which is attributable not just to himself but also to NCBR, Jones, and Kuykendall, constitutes negligent misrepresentation.

**COUNT VII**
**NEGLIGENCE**

**84.** The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length, and, in addition, or else pleading in the alternative, alleges:

**85.** Defendants negligently valued, priced, promoted, marketed, advertised, and sold grossly overpriced "Don Everhart Signature Series" "certified modern bullion" coins to Plaintiff. In doing so, the Defendants owed a duty to Plaintiff to exercise reasonable care in valuing, pricing, promoting, marketing, advertising, and selling the coins, which duty the Defendants breached, and which breach proximately caused Plaintiff to suffer damages. The Defendants' wrongful conduct constitutes negligence at Texas common law.

**COUNT VIII**

**MONEY HAD AND RECEIVED**

**86.** The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length and, in addition, or else pleading in the alternative, alleges:

**87.** By their above-described wrongful actions: (1) each of the Defendants, NCBR, Jones, Kuykendall, and Ausby, received money belonging to Plaintiff, (2) each of the afore-named Defendants benefitted from receipt of the money, and (3) under principles of equity and good conscience, the Defendants should not be permitted to keep the money. Defendants, NCBR, Jones, Kuykendall, and Ausby, therefore, should be compelled to refund such wrongfully charged and collected funds to Plaintiff under the equitable doctrine of money had and received.

**COUNT IX**
**UNJUST ENRICHMENT**

**88.** The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length and, in addition, or else pleading in the alternative, alleges:

**89.** The Defendants, NCBR, Jones, Kuykendall, and Ausby, have been unjustly enriched by receipt of funds which were obtained through fraud and/or stolen from Plaintiff.

**90.** Accordingly, Plaintiff seeks to impose a constructive trust over (and recover) all amounts by which the Defendants have been unjustly enriched.

**ALTER-EGO**

**91.** The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**92.** Alter-ego liability is established upon a showing that a defendant has complete domination of a corporation in respect to the transaction at issue and that such domination was used to commit a

fraud or wrong against the plaintiff which resulted in plaintiff's injury. Because a decision to pierce the corporate veil will necessarily depend on the attendant facts and equities of the case at issue, there are no definitive rules governing the circumstances when this power may be exercised.

**93.** Based upon information and belief, Defendants Jones and Kuykendall use the corporate form of NCBR as an alter-ego and as a mere tool or business conduit. Jones and Kuykendall completely dominate NCBR to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by their own and NCBR telemarketing sales agent and "investment advisor" Ausby's wrongful conduct detailed *supra*. Upon information and belief, there are both documented and undocumented fund transfers between NCBR and Jones and Kuykendall, and there is an unclear allocation of profit and losses between NCBR and Jones and Kuykendall. In short, NCBR is substantially one and the same with Jones and Kuykendall, and the relationship between NCBR and Jones and Kuykendall is an illegitimate use of the corporate form.

**RESPONDEAT SUPERIOR**

**94.** Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**95.** Defendant NCBR also is liable for the above-detailed wrongful acts and omissions committed by its telemarketing sales agent, Ausby, during the course and scope of his agency or employment with NCBR; to wit, Ausby's wrongful conduct was committed (i) within his general authority, (ii) in furtherance of NCBR's business, and (iii) to accomplish Jones', Kuykendall's and Ausby's objective, namely, to directly and/or proximately cause Plaintiff to suffer damages to the financial benefit of NCBR, Jones, Kuykendall, and Ausby—and for which NCBR is liable under the doctrine of *respondeat superior*.

## RELIEF REQUESTED

**96. ACTUAL AND CONSEQUENTIAL DAMAGES.** As direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered (and continues to suffer) damages in the form of, *inter alia*, the amounts paid to Defendants for the "Don Everhart Signature Series" "certified modern bullion" coins in excess of their value. Plaintiff is entitled to recover actual and consequential damages, as well as damages for the mental anguish she has suffered in connection with these transactions, in an amount to be determined by the trier of fact. All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

**97. TREBLE DAMAGES.** Plaintiff also is entitled to treble damages for Defendants' knowing, willful, and intentional wrongful conduct pursuant to 18 U.S.C. § 1964(c). In addition, or else in the alternative, Plaintiff is entitled to treble damages for Defendants' knowing, willful, and intentional wrongful conduct in violation of the Texas DTPA pursuant to Section 17.50(b)(1) of the Texas Business and Commerce Code. All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

**98. EXEMPLARY DAMAGES**. The Defendants' wrongful actions were committed through fraud and/or intentionally, willfully, with malice, and/or with conscious and/or reckless disregard for the Plaintiff's rights and interests. Accordingly, Ms. Hales is entitled to an award of exemplary damages against each of the Defendants, both as punishment and to discourage such wrongful conduct in the future. Further, such exemplary damages are not capped or limited because Defendants' wrongful conduct constitutes a felony under Section 32.46 and Chapter 31 of the Texas Penal Code. *See* Tex. Civ. Prac. & Rem. Code § 41.008(c). All conditions precedent to the Plaintiff's claim for relief have been performed and/or occurred.

**99. ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS**. Plaintiff also is entitled to recover her reasonable and necessary attorneys' fees, litigation expenses, all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, and witness fees of and from Defendants.

**WHEREFORE**, Plaintiff, Catherine Hales, requests judgment in her favor and against the Defendants, jointly and severally, awarding compensatory damages for all actual and consequential losses, treble damages under 18 U.S.C. § 1964(c) and/or the Texas DTPA, exemplary damages, and/or all amounts by which Defendants have been unjustly enriched; directing an equitable accounting for all benefits, consideration and profits received, directly or indirectly, by Defendants, including the imposition of a constructive trust and the voiding of unlawful transfers; and awarding attorneys' fees and litigation expenses pursuant to 18 U.S.C. § 1964(c) and the Texas DTPA, and costs of suit; together with pre-judgment interest, and such other and further relief as the Court deems just, proper, and equitable.

**JURY DEMAND**

Plaintiff respectfully demands a trial by jury on all of her claims and causes of action so triable.

**STEVENS LAW FIRM**

By: */s/ R. Lyn Stevens*
R. Lyn Stevens
P.O Box 1187
Friendswood, Texas 77549
(409) 880-9714
*Lyn@Stevens.Law*
Texas Bar No. 19189020

*Attorneys for Plaintiff,*
*Catherine Hales*